WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Hoyt,<br><br>           Plaintiff,<br><br>v.<br><br>WeLink Communications, Inc.,<br><br>           Defendant. | No. CV-23-00287-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss and Compel Arbitration. (Doc. 16.) Plaintiff filed a response (Doc. 18), and Defendant filed a reply (Doc. 19). After reviewing the parties' arguments and the relevant law, the Court will deny Defendant's Motion.

**I.     BACKGROUND**

This action stems from Defendant's alleged wrongful termination of Plaintiff, Mr. Hoyt. (Doc. 16 at 2.) Plaintiff was employed by WeLink, a Utah headquartered company, as the Vice President of Network Operations and Engineering from December 2020 until his termination in November 2022. (Doc. 1 at 2–4.) As part of his employment, Plaintiff signed the "Senior Management Agreement" which contains, among other things, an arbitration provision. (Doc. 16 at 3.) It also contains a governing law clause wherein the parties agreed to litigate under Delaware law, where WeLink is incorporated. (*Id.* at 5–6.) After five months of being with WeLink, Plaintiff signed a separate document called "the Guidebook." (Doc. 18-1.) This Guidebook contains some similar language to the Senior

1   Management Agreement, with additional company procedures. (*Id.*) Now, Plaintiff
2   alleges that Defendant terminated him just before his equity shares could vest after using
3   his sick leave for knee surgery, thus violating Arizona state law. (Doc. 1 at 3–4.) He
4   specifically brings four claims: (1) breach of contract and the duty of good faith and fair
5   dealing; (2) violation of Arizona Employment Protection Act; (3) violation of Arizona Paid
6   Sick Leave Act; and (4) violation of Arizona Wage Act. (Doc. 1.) Defendant denies each
7   of these claims. (Doc. 16 at 2.) Defendant further seeks to enforce the arbitration provision
8   in the Agreement, and now asks the Court to dismiss this case and compel Plaintiff to
9   instead arbitrate his claims.

10  **II.     DISCUSSION**
11      **a. Conflict of Laws**
12  As a threshold issue, the Court will address the conflict of laws issue presented by
13  the parties. Defendant argues that per the Senior Management Agreement, Delaware law
14  should govern all disputes arising under it. (Doc. 16 at 5.) Conversely, Plaintiff argues
15  that the Court should conduct a choice of law analysis and find that—because of Arizona's
16  substantial and material interests in the case —Arizona law should apply. (Doc. 18 at 3.)
17  However, as Defendants also note, where there is a valid arbitration agreement, conflicts
18  of law analysis is reserved for the arbitrator. *Millenium 3 Techs. v. ARINC, Inc.*, No. CV08-
19  1257-PHX-JAT, 2008 WL 4737887 (D. Ariz. Oct. 29, 2008) ("It is well settled that, under
20  the FAA, when an agreement contains arbitration and choice of law clauses, the
21  determination of what law applies to the agreement is one that falls within the scope of the
22  agreement and should be made by the arbitrator rather than the courts."). For the reasons
23  explained below, the Court finds that the arbitration provision is enforceable and applies
24  to Plaintiff's claims. Therefore, the Court will not settle the choice of law issue and instead
25  leave it for the arbitrator.
26      **b. Enforceability of Arbitration Agreement**
27  On a motion to compel arbitration pursuant to the Federal Arbitration Act (FAA), a
28  district court decides "(1) whether the parties formed a valid agreement to arbitrate, and, if

so, (2) whether the agreement to arbitrate encompasses the underlying dispute." *Collins v. Macy's Inc.*, No. CV-19-02572-PHX-GMS, 2019 WL 5188749, at *2 (D. Ariz. Oct. 15, 2019). If both issues are answered in the affirmative, then the court must enforce the arbitration agreement. *Equal Employment Opportunity Comm'n v. Cheesecake Factory, Inc.*, No. CV08-1207-PHX-NVW, 2009 WL 1259359, at *2 (D. Ariz. May 6, 2009). Arbitration agreements are construed under general state law contract principles. *Id.*

### i. Senior Management Agreement Applies

Before the Court can reach the two-prong test described above, it must resolve Plaintiff's contention that the Guidebook Agreement supersedes the Senior Management Agreement, and the Court should be determining whether there is a valid arbitration agreement based on the Guidebook Agreement's provision, not the Senior Management Agreement's provision. (Doc. 18. at 7.) Plaintiff argues that the Guidebook Agreement provision controls because it addresses "the same matter of arbitration" and is more recent. (*Id.*) Conversely, Defendant argues that this Guidebook is not, and was never intended to be, a contract. (Doc. 19 at 4.) Although the Court need not determine whether Delaware or Arizona law applies to the contractual issues here, both states have found that employee handbooks, such as the Guidebook here, are only part of an employment contract under specific circumstances—none of which are present here. *See Demasse v. ITT Corp.*, 984 P.2d 1138, 1143 (Ariz. 1999) (internal quotations omitted) (An employee handbook will be considered contractual "only if it discloses a promissory intent or [is] one that the employee could reasonably conclude constituted a commitment by the employer. If the statement is merely a description of the employer's present policies . . . it is neither a promise nor a statement that could reasonably be relied upon as a commitment."); *Gaines v. Wilmington Trust Co.*, Civ. A. No. 90C-MR-135, 1991 WL 113613, at *2 (Del. Super. Ct. June 3,1991) (finding no binding contract where the handbook "made it clear that the handbook gave employees no contractual rights"). Here, the Guidebook includes three disclaimers about not being a contract and a disclaimer noting that Defendant could change the guidelines, or their present policies, at any time. (Doc. 18-1 at 3, 7.) Both the relevant

circumstances and the Guidebook language prevent the formation of a new contract or merger of the Guidebook's terms into to the Senior Management Agreement, as Plaintiff alternatively appears to argue. (Doc. 18 at 7–8.) Employees' signing merely shows acknowledgement that they read the document, not creation of a contract, therefore this does not change this analysis. (Doc. 18-1 at 23.) Because the Guidebook cannot be construed as a contract, the Court will not address Plaintiff's arguments that its arbitration provision is unconscionable (Doc. 18 at 12) and will therefore analyze the arbitration provision from the Senior Management Agreement.

### ii. Two Part Test

The Court also finds that the Senior Management Agreement has a valid arbitration agreement that applies to Plaintiff's claims. In relevant part, this arbitration agreement states:

> In the event of any controversy or dispute between Employee and the Company . . . as to all or any part of this Agreement, any other agreement, any dispute or controversy whatsoever pertaining to or arising out of the relationship between Employee and the Company and/or the Company Group or the dissolution or termination of same, and/or the arbitrability thereof (collectively, "Arbitrable Disputes" as further defined below) shall . . . be resolved exclusively by binding arbitration solely between Employee and the Company and/or Person described above, conducted in Salt Lake City, Utah.

(Doc. 16 at 4.) The agreement further outlines "arbitrable disputes" in relevant part as "all disputes regarding the validity of this Agreement, the validity of the arbitration provisions of this Agreement, or whether any particular claim or matter is included within the scope of the arbitration provisions of this Agreement." (*Id.*)

The Court decides whether there is a valid arbitration provision based on state law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). To reiterate, the Court will not decide which state's law applies to this contract. However, under both Arizona and Delaware law this is a valid, enforceable arbitration agreement.

Under Arizona law, a contract, or a provision of a contract, will be enforceable where there is "an offer, acceptance, consideration, a sufficiently specific statement of the

parties' obligations, and mutual assent." *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019) (internal citations omitted). Plaintiff argues that the arbitration provision is substantively unconscionable because it lacks overall fairness and mutual assent. (Doc 18 at 10–11.) Plaintiff further argues that it is a "one sided" term, which are unenforceable. *See Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 57 (Ariz. 1995) (a contract may be held unconscionable where the terms are "so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain . . . "). The Court disagrees. As written, the Senior Management Agreement's arbitration provision applies both to Defendant and Plaintiff alike. Further, an imbalance in bargaining power alone will not make a contract, or its provisions, unconscionable. *Id.* (unconscionability is meant as a principle of "prevention of oppression and unfair surprise . . . not of disturbance of allocation of risks because of superior bargaining power") (internal citation omitted). Here, although Plaintiff argues there was an imbalance in bargaining power, the Court does not find it so great as to make the otherwise valid, and mutually assented to, arbitration provision unenforceable. *See Morales v. Sun Contractors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008) ("Every contracting party has the duty to learn and know the contents of a contract before he signs and delivers it . . . [a]rbitration agreements in the employment context are not exempt from this principle.") (citing *Hoshaw v. Cosgriff*, 247 F. 22, 26 (8th Cir. 1917)).

Analysis under Delaware law comes out the same. Under Delaware law a contract is rendered unconscionable "if one of the parties lacks meaningful choice and the contract terms unreasonably favor one party over the other." *Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 574 (D. Del. 2009). Here, as stated above, this provision applies to both parties. Further, like under Arizona law "[u]nequal bargaining power, without more, is insufficient to hold an arbitration agreement unconscionable." *Id.* Plaintiff, having read the arbitration provision, entered into the Senior Management Agreement willingly as a condition of his employment. He had a choice to enter into this agreement, and even if there were a disparity in bargaining power, under Delaware law this is insufficient to render

the provision unenforceable.

Further, as to the second prong, it is clear from the language of the arbitration provision that Plaintiff's claims fall under the scope of the provision. The provision is broadly worded so that "any dispute or controversy whatsoever pertaining to or arising out of the relationship between Employee and the Company" fall under the provision's arbitration mandate. Plaintiff's claims for breach of contract and violation of various state laws meet this provision. Plaintiff does little to explain how the claims are not subject to this provision, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Therefore, the Court finds the arbitration provision is enforceable.

### c. Dismissal or Stay

In addition to asking the Court to compel arbitration, Defendant also asks the Court to dismiss the case. (Doc. 16.) Plaintiff requests that if the Court does enforce the arbitration provision, it instead stay the case pending arbitration. (Doc. 18 at 16.) Defendant contends this is unnecessary, arguing instead that the case should be dismissed for lack of proper venue because the arbitration provision selected Utah as the venue for disputes arising out of the parties' relationship. (Doc. 16 at 10.) Plaintiff argues a stay is more appropriate under Ninth Circuit precedent. *See Medivas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014).

First, the Court finds Plaintiff is not required to file their claims in the venue dictated by the contested arbitration clause. *Textile Unlimited, Inc. v. A..BMH & Co., Inc.*, 240 F.3d 781, 783 (9th Cir. 2001) ("[W]e conclude that the Federal Arbitration Act does not require venue in the contractually-designated arbitration locale."). Second, the Court should "determine whether the arbitration is valid before requiring the parties to resolve this dispute in the location specified by the arbitration clause." *R & L Ltd. Invs., Inc. v. Cabot Inv. Properties, LLC*, 729 F. Supp. 2d 1110, 1119 (D. Ariz. 2010). As discussed above, the Court finds that the arbitration clause is valid, but it contracts for arbitration to occur in Utah, which is outside of this Court's jurisdiction. Because of this, the final issue is

whether the Court can compel arbitration outside of its jurisdiction or alternatively compel arbitration in this district despite the forum selection clause. While there are some conflicting district court decisions, the majority agree that a district court is only able to compel arbitration in its own district. *See* 9 U.S.C. § 4 ("The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."); *United States ex rel. Turnkey Const. Servs., Inc. v. Alacran Contracting, LLC*, No. 13-CV-01654 TLN-CMK, 2013 WL 6503307, at *3 (E.D. Cal. Dec. 11, 2013) (compelling arbitration outside the court's jurisdiction to discourage forum shopping); *Simplicity Int'l v. Genlabs Corp.*, No. CV 09-6146 SVW (RCX), 2010 WL 11507526, at *12 (C.D. Cal. May 6, 2010) (staying the case while denying the motion to compel arbitration because the arbitration clause requires arbitration outside the district); *ClearCapital.com, Inc. v. Computershare, Inc.*, No. 18-CV-00817-RBJ, 2018 WL 9814968, at *2 (D. Colo. Nov. 6, 2018) ( "[T]he rule in the Ninth Circuit is that a court may not compel arbitration in another judicial district, but it may compel arbitration in its own district.").

Accordingly, the Court finds that it cannot compel arbitration in the District of Utah. The Court also finds that compelling arbitration in the District of Arizona would be inappropriate because it would contradict what the Court finds to be a valid arbitration agreement wherein the parties selected Utah as the arbitration forum. "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration **in accordance with the terms of the agreement**." 9 U.S.C. § 4 (emphasis added). Therefore, the case will be stayed so that Defendant can pursue enforcement in the District of Utah.

### III. CONCLUSION

For the reasons discussed above,

**IT IS ORDERED denying** Defendant's Motion to Dismiss and Compel Arbitration. (Doc. 16.) The alternative request to stay this action is **granted**. The parties

- 7 -

are ordered to update the Court on the status of arbitration every 60 days.

Dated this 16th day of January, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge